Filed 6/29/21  P. v. Rubio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | C090921 |
| v. | (Super. Ct. No. CRF180292) |
| ROBERT ALCATRAZ RUBIO, | |
| Defendant and Respondent. | |

The People charged defendant Robert Alcatraz Rubio with committing a carjacking in Sacramento County and a carjacking in Yolo County on the same day. Defendant pleaded no contest to the Sacramento County charge and moved to dismiss the Yolo County case pursuant to Penal Code section 654[1] and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*).  The trial court granted the motion and dismissed the Yolo County case.

---

[1] Undesignated statutory references are to the Penal Code.

1

The People appeal, arguing among other things that the alleged Yolo County offense was separated by time and distance from the Sacramento County offense and involved different victims, and should not have been dismissed. Agreeing with the People, we will reverse the trial court's order.

BACKGROUND

Jose R. testified at a preliminary hearing in Yolo County that on August 18, 2017, he was performing home improvements at a house in West Sacramento. When he was near his truck in the house's driveway, a man approached him, punched him in the face, and drove off with his truck.

The parties in the Yolo County case stipulated that a police officer would testify that on the same day in August 2017, defendant subsequently carjacked S.F. on Auburn Boulevard in Sacramento and that Jose R.'s truck was discovered at the scene of the Sacramento carjacking.

Defendant pleaded no contest in Sacramento County to the carjacking of S.F., and defendant admitted a prior strike allegation. The Sacramento trial court sentenced defendant to 10 years in prison.

The People also charged defendant in Yolo County with the carjacking of Jose R. (§ 215, subd. (a).) It was alleged that defendant had two prior strikes (§§ 667, subds. (b)-(i), 1192.7, subd. (c)) and two prior convictions within the meaning of section 667, subdivision (a)(1), and that he had served four prior prison terms (§ 667.5).

On July 29, 2019, defendant filed a *Kellett* motion to dismiss the Yolo County case pursuant to section 654. He argued Sacramento County's failure to join the two alleged carjacking cases triggered a prosecutorial bar in Yolo County. On October 31, 2019, the trial court found it "a textbook *Kellett* motion" and dismissed the case "due to multiple prosecutions." The People timely appealed.

2

DISCUSSION

The People argue prosecution of the carjacking in Yolo County did not violate section 654. They concede the Yolo carjacking could have been joined with the Sacramento County case, and the prosecution was, or should have been, aware of both offenses. Nevertheless, they assert the same act or course of conduct did not play a significant part in each offense under any applicable test. Defendant counters that the two carjackings were a single course of conduct, a fact confirmed by the use of evidence from the Sacramento County case to establish defendant's identity in the Yolo County case.

A

Section 654 prohibits multiple punishments for the same act or omission and also multiple prosecutions for the same act or omission where there has been an acquittal or conviction and sentence. (§ 654, subd. (a).) "The separate concerns have different purposes and different rules of prohibition." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*).) The bar on multiple punishments is "to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) Whereas " '[t]he rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible.' " (*Kellett, supra*, 63 Cal.2d at p. 825.)

The defendant in *Kellett* was arrested for standing on a public sidewalk with a pistol. He was charged with exhibiting a firearm in a threatening manner and then later charged with being a felon in possession of a firearm. He pleaded guilty to the exhibiting charge and moved to dismiss the possession charge. (*Kellett, supra*, 63 Cal.2d at p. 824.) In construing section 654 and section 954, the permissible joinder statute, our Supreme Court stated: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too

3

interrelated to permit their being prosecuted successively. . . . When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id*. at p. 827.)

As this court has summarized, " '[t]he *Kellett* rule, while seeking to prevent harassment of defendants, was bottomed in large part on a concern for avoiding needless repetition of evidence, and for conserving the resources and time of both the state and the defendant.' [Citation.] Thus the offenses must be transactionally related, and not just joinable, before the *Kellett* rule applies. [Citation.] [¶] The *Kellett* rule applies only where 'the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part.' " (*Valli, supra*, 187 Cal.App.4th at p. 796.)

Two tests have been applied to determine whether the same act or course of conduct played a significant part in both offenses. The first looks at the timing and location of the crimes and whether they are "unrelated offenses arising from separate physical acts performed at different times." (*People v. Douglas* (1966) 246 Cal.App.2d 594, 599; see *People v. Ward* (1973) 30 Cal.App.3d 130, 136 (*Ward*) ["The crimes were committed at different locations, at different times, against different victims, and with different objectives"].) The second is an evidentiary test: "if the evidence needed to prove one offense necessarily supplies proof of the other . . . the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636 (*Hurtado*).) Ultimately, what matters "is the totality of the facts, examined in light of the legislative

4

goals of sections 654 and 954, as explained in *Kellett*." (*People v. Flint* (1975) 51 Cal.App.3d 333, 336.)

"Whether *Kellett* applies must be determined on a case-by-case basis." (*Valli, supra*, 187 Cal.App.4th at p. 797.) "We review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to" defendant. (*People v. Ochoa* (2016) 248 Cal.App.4th 15, 29.) "We review de novo the legal question of whether Section 654 applies." (*Ibid*.)

Various cases are illustrative. In *Ward, supra*, 30 Cal.App.3d 130, the defendant kidnapped and raped a woman, then put her in the trunk of his car and drove to her residence, convinced the women's daughter to drive with him to meet her mother, and then sexually assaulted the daughter. The defendant pleaded guilty to sexual perversion against the daughter in San Bernardino County, and was also charged with the kidnapping and rape of the mother in Los Angeles County. (*Id*. at p. 133.) *Kellett* did not bar the Los Angeles County prosecution because "[t]he crimes were committed at different locations, at different times, against different victims, and with different objectives. The mere fact that they occurred in defendant's vehicle during the same night does not connect them as parts of a continuous course of conduct." (*Ward,* at p. 136.)

In *Hurtado, supra*, 67 Cal.App.3d 633, the defendant failed field sobriety tests after driving erratically, and officers discovered heroin on him. Defendant pleaded guilty to driving under the influence (DUI) but moved to dismiss the narcotics charges in a separate case. (*Id*. at pp. 635-636.) The court held that the evidence to prove the DUI and narcotics offenses were sufficiently distinct to permit separate prosecutions of the two offenses. (*Id*. at pp. 636-637.)

In *People v. Britt* (2004) 32 Cal.4th 944, a defendant with prior sex-crime convictions moved from Sacramento County to El Dorado County without informing either county. (*Id*. at p. 949.) The People charged the defendant in Sacramento County with failing to report the move and in El Dorado County with failing to register. He

5

pleaded no contest in Sacramento County and moved to dismiss the El Dorado County case under section 654. (*Id*. at pp. 949-950.) The California Supreme Court held that both offenses involved the single unreported move within California. (*Id*. at p. 954.) The Court further explained that the "[d]efendant's commission of each crime was essential to the successful commission of the other, and he had the same objective when he committed both crimes." (*Id*. at p. 952.)

In *Valli, supra*, 187 Cal.App.4th 786, after a witness identified the defendant as the killer in a murder, the defendant temporarily evaded police following a car chase. (*Id*. at pp. 791-792) During the murder trial, the prosecutor argued defendant's flight showed guilt. (*Id*. at p. 792.) The jury acquitted the defendant of murder but on the day of the acquittal, the defendant was arrested for felony evasion. (*Id*. at pp. 792-793.) At the evading trial, witnesses from the murder trial testified and the jury found the defendant guilty of the charges. (*Id*. at p. 793.) On appeal, this court held that section 654 and *Kellett* did not bar the evasion prosecution, noting that the evidentiary test required more than a trivial overlap of the evidence, and that simply using facts from one prosecution in another prosecution does not trigger the application of *Kellett.* (*Valli,* at p. 799.) Even though the prosecution referenced the evasion in seeking a conviction for murder, and even though several witnesses testified in both cases, different evidentiary pictures were required: one of a shooting at night and the other of police pursuits in the following days. The evidence needed to prove murder did not supply proof of evading. And the evidence of evading showed at most a possible consciousness of guilt as to the murder. (*Id*. at pp. 799-800.)

Finally, in *People v. Hendrix* (2018) 20 Cal.App.5th 457, police found the defendant intoxicated after he ran a red light. (*Id*. at p. 460.) The defendant paid the fine for the red light infraction and then moved to dismiss the DUI case under section 654 and *Kellett*. (*Hendrix,* at p. 460). Relying on *Hurtado*, this court concluded the evidence required to prove the red light infraction was sufficiently distinct from that required to

prove the charges in the DUI case so as to permit separate prosecutions. (*Hendrix,* at pp. 464-465.)

B

Here, the two carjackings were distinct crimes in different locations at different times with different victims. Proof of the crimes would require different evidence, and proof of guilt as to one crime would not establish guilt as to the other crime.

It is true that the prosecutor in the Yolo County case relied on police testimony in the Sacramento County case to establish defendant's identity at the Yolo County preliminary hearing. But such minimal overlap is not sufficient to bar the Yolo County prosecution. In *Valli*, several witnesses testified in both cases, and the evasion was used to establish guilt in the murder, yet this court held the overlap was trivial because the evidence needed to prove murder did not supply proof of evading. (*Valli, supra*, 187 Cal.App.4th at p. 800.)

Defendant notes that at a certain point in time, the vehicles involved in each carjacking crime were located in the same place at the same time. But that is just one part of the evidentiary picture required to prove guilt. The carjackings occurred in different counties at different times with different victims. Some temporal proximity of successive crimes does not necessarily establish a single course of conduct. As the court held in *Ward*, the mere fact that the crimes occurred in the same vehicle on the same evening still did not connect them as part of a continuous course of conduct. (See *Ward, supra*, 30 Cal.App.3d at p. 136.) Here, unlike in *Ward*, the crimes involved different vehicles.

Defendant also points to *Britt, supra,* 32 Cal.4th 944, a case involving crimes in two counties on the same day. But *Britt* involved a single act: a sex-offender moving from Sacramento County to El Dorado County without informing either county. Here, defendant committed two distinct acts, and his travel from one county to another was not an element of either offense.

7

In addition, defendant relies on *Barriga v. Superior Court* (2012) 206 Cal.App.4th 739.  But in that case there was no dispute that the two offenses were part of the same course of conduct, so this court did not analyze that issue.  (*Id*. at p. 747.)  " 'It is axiomatic that cases are not authority for propositions not considered.' " (*Howard Jarvis Taxpayers Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 169.)

Prosecuting defendant for his distinct carjacking in Yolo County is not inconsistent with, and is not barred by, the protections afforded under section 654 and *Kellett*.

## DISPOSITION

The order granting defendant's motion to dismiss is reversed.  The matter is remanded to the trial court for further proceedings.


                                              /S/
                                    MAURO, J.


We concur:


   /S/
HULL, Acting P. J.


   /S/
HOCH, J.